**E-FILED**
Thursday, 02 August, 2012  04:18:04 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| ROY J. CLARK, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 10-3185 |
| ) | |
| DONALD GAETZ,[1] Warden, ) | |
| ) | |
| Respondent. ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

This matter is before the Court on the Petition for Writ of Habeas Corpus (d/e 1) filed pursuant to 28 U.S.C. § 2254 by Petitioner Roy J. Clark.  Petitioner is serving a combined 45-year sentence in the Menard Correctional Center for sexual assault and aggravated robbery.  For the reasons discussed below, the Petition is DENIED.

---

[1] Michael P. Atchison is now warden of the Menard Correctional Center where Petitioner is currently confined.  The Court therefore substitutes Atchison as the respondent in this case.  See Rule 2(a) of the Rules Governing Section 2254 Cases in the U.S. District Courts; Fed. R. Civ. P. 25(d).

# I. BACKGROUND

In the early morning hours of November 7, 2004, Betty Morgan walked home from Casino Starlite in Quincy, Illinois, after declining a ride from a friend.  Morgan had consumed alcohol, but was not intoxicated.  During the course of her walk, a silver van pulled up beside Morgan and the driver of the van asked her if she needed a ride.  Morgan declined, and the van drove out of sight.  Soon thereafter, a man in a dark coat approached Morgan.  She recognized the man as the driver of the silver van. She heard a clicking noise and assumed the man had a gun, though the man never displayed a weapon.  The man asked Morgan how much money she had.  The man then put his hand on Morgan and guided her into a parking garage.  Both parties entered the silver van, where the man proceeded to sexually assault Morgan.  When the man finished, he told her she could go.

Fearing for her safety, Morgan left the scene and ducked between some houses.  Belinda Abbey walked over to Morgan, who was crying. Abbey and Titus Johnson drove Morgan to a hospital, where DNA

testing identified semen recovered from Morgan's vaginal swab as belonging to Petitioner.

In his defense, Petitioner testified that Morgan had agreed to engage in sexual intercourse in exchange for drugs. Petitioner alleged that, while driving the silver van, he asked Morgan if she needed a ride home, and she responded affirmatively. Morgan mentioned she used crack or cocaine, and Petitioner requested that Morgan step out of the van so he could call his drug dealer. Petitioner brought Morgan back into the parking garage to wait for the dealer to arrive. Morgan indicated she had no money, and both parties agreed to have sex in exchange for the drugs. They had sex and, when the dealer failed to show, Petitioner told Morgan to go home.

Petitioner was tried in the Eighth Judicial Circuit Court of Illinois, Adams County. The State called as witnesses Titus Johnson and James Parson. Relevant here, Johnson testified that he was incarcerated on multiple pending charges for selling drugs, though he noted the charges were unrelated to the instant case. Johnson further testified he had been

driving around on the morning of November 7, 2004, to visit Abbey, the mother of his child.  He also indicated he knew Petitioner.  James Parson testified regarding Petitioner's possession of a BB gun.  Parson also acknowledged that Petitioner's sister had secured a restraining order against him.

A jury found Petitioner guilty of sexual assault and aggravated robbery, and the trial court sentenced him to consecutive prison terms of 35 years and 10 years, respectively.  Petitioner moved for a new trial in relevant part because the State failed to disclose information about James Parson.  Specifically, the State failed to disclose that Parson holds an extensive criminal record, that Parson was operating as a confidential source for the State, and that Parson had purchased drugs from Johnson while Parson was operating as a confidential source under the name "Anthony White."  The trial court denied Petitioner's motion, but acknowledged a discovery violation.

In a pro se motion for reduction of sentence, Petitioner alleged his trial counsel was ineffective.  The court appointed David Farmer to

represent Petitioner.  Petitioner later filed a second motion for appointment of new counsel, citing a conflict of interest.  Petitioner noted that David Farmer works in the Adams County Public Defender's office under Edward Downey, Petitioner's prior counsel.  The motion was denied.

Petitioner appealed his conviction, claiming the trial court failed to conduct an adequate inquiry into his ineffective assistance of counsel claim; denied him his right to present a defense by prohibiting him from eliciting certain witness testimony; and erred in denying his motion for a new trial based on the State's discovery violations.  The Appellate Court of Illinois, Fourth District, affirmed the conviction and sentence. People v. Clark, No. 4-06-0116 (Ill. App. Ct. Nov. 20, 2007).  Petitioner filed a petition for leave to appeal (PLA) with the Illinois Supreme Court, but the PLA was denied.  People v. Clark, No. 105800 (Ill. Mar. 26, 2008).

Petitioner filed a pro se motion for post-conviction relief in the Eighth Judicial Circuit Court of Illinois, Adams County, alleging the trial court failed to conduct an adequate inquiry into his ineffective assistance

of counsel claim; the State failed to disclose Parson's criminal record; the State knowingly presented Parson's perjured testimony; and appellate counsel was ineffective for failing to raise the issue that Parson was operating as a confidential source for the State. Petitioner's motion for post-conviction relief was denied.  Def.'s Ex. H. Petitioner appealed, and the Appellate Court of Illinois, Fourth District, affirmed.  People v. Clark, No. 4-08-0927 (Ill. App. Ct. Dec. 7, 2009).  Petitioner filed a PLA with the Illinois Supreme Court, but the PLA was denied.  People v. Clark, No. 110053 (Ill. May 26, 2010).

Petitioner filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996.

## II. HABEAS CORPUS REVIEW

Petitions for Writ of Habeas Corpus are adjudicated pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  PL 104-132, April 24, 1996, 110 Stat. 1214.  To petition for Writ of Habeas Corpus, the petitioner must generally have "exhausted the

remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A)

(2006).

> A habeas petitioner who has exhausted his state court
> remedies without properly asserting his federal claim at each
> level of state court review has procedurally defaulted that
> claim.  A procedural default will bar federal habeas relief
> unless the petitioner can demonstrate both cause for and
> prejudice stemming from that default, or he can establish that
> the denial of relief will result in a miscarriage of justice.
> Cause for a default is ordinarily established by showing that
> some type of external impediment prevented the petitioner
> from presenting his federal claim to the state courts.
> Prejudice is established by showing that the violation of the
> petitioner's federal rights "worked to his actual and substantial
> disadvantage, infecting his entire trial with error of
> constitutional dimensions."

Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004) (citations

omitted).  Alternatively, to establish that the denial of relief will result in

a miscarriage of justice, "the petitioner must show that he is actually

innocent of the offense for which he was convicted."  Id.  However, "[a]n

application for a Writ of Habeas Corpus may be denied on the merits,

notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Petitions for Writ of Habeas Corpus may only be granted when state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court decision is "contrary" to clearly established federal law if it is "substantially different from the relevant precedent of [the Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). Thus, "the state court must have either (i) adopted a rule that contradicts the governing law of the U.S. Supreme Court or (ii) on a set of facts materially indistinguishable from those at issue in the applicable Supreme Court precedent, reached a different result." Ward v. Sternes, 334 F.3d 696, 703 (7th Cir. 2003). A state court decision is an "unreasonable application" of clearly established federal law when the "state court correctly identifies the governing legal rule but applies it unreasonably to the facts of the particular prisoner's

case." Badelle v. Correll, 452 F.3d 648, 654 (7th Cir. 2006). A state

court decision, then, "must have been not only erroneous, but objectively

unreasonable." Ward, 334 F.3d at 703.

Habeas review under AEDPA is deferential to the decisions of state

courts. See Badelle, 452 F.3d at 654. "[A] federal court reviews [state

court] determinations for reasonableness only." Abrams v. Barnett, 121

F.3d 1036, 1037 (7th Cir. 1997).

## III. ANALYSIS

Petitioner bases his Petition for Writ of Habeas Corpus on five

alleged constitutional violations: (1) a Fourteenth Amendment Due

Process violation when the state trial court failed to conduct an adequate

inquiry into his ineffective assistance of counsel motion; (2) a Due

Process violation when the court prohibited him from eliciting certain

testimony from witness Titus Johnson; (3) a Due Process violation when

the State failed to disclose the criminal record of witness James Parson;

(4) a Due Process violation when the State knowingly presented the

perjured testimony of Parson; and (5) Sixth and Fourteenth Amendment

violations when his counsel failed to raise the issue that Parson works as a confidential source for the State under the name "Anthony White." None of Petitioner's claims, however, are sufficient for the grant of a Writ of Habeas Corpus.

### A. Petitioner's _Krankel_ Claim is Grounded in State Law and is Procedurally Defaulted

Petitioner claims his Fourteenth Amendment right to Due Process was violated when the state trial court failed to conduct an adequate inquiry into his motion alleging ineffective assistance of counsel. The State of Illinois requires judicial inquiry into claims of ineffective assistance of counsel. See People v. Moore, 207 Ill.2d 68, 79 (Ill. 2003) ("The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's . . . claim of ineffective assistance of counsel."). This procedure has its roots in People v. Krankel, 102 Ill.2d 181, 189 (Ill. 1984).

However, "no [United States] Supreme Court precedent mandates the [Krankel] inquiry." Dolis v. Gilson, No. 07 C 1816, 2009 WL 5166228, at *13 (N.D. Ill. 2009). Petitioner thus alleges the state trial

court "violated Illinois state law, not federal law."  See id.  Questions of

state substantive law are immune from review in federal habeas corpus

proceedings.  See Wainright v. Sykes, 433 U.S. 72, 81 (1977).

Moreover, because a Writ of Habeas Corpus may only be granted when

state court proceedings "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law,

as determined by the Supreme Court of the United States," 28 U.S.C. §

2254(d)(1), the alleged Krankel violation is insufficient for the grant of a

Writ of Habeas Corpus.

This Court also notes that Petitioner was not in fact deprived of

effective assistance of counsel.  The relevant inquiry here is "whether

counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a

just result."  Strickland v. Washington, 466 U.S. 668, 686 (1984).  "The

proper standard for attorney performance is that of reasonably effective

assistance," id. at 687, and judicial scrutiny of counsel's performance is

"highly deferential."  Id. at 689.  Thus, Petitioner "must show that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Petitioner alleges "his trial counsel Mr. Edward Downey's deficient performance affected the jury's verdicts denying [Petitioner] a fair and impartial trial," and that "Mr. Downey did not point out changes in testimonies that may have changed the jury's decision." The "changes in testimonies" are unspecified. Moreover, the record fails to show any changes in witness testimony that may have affected the jury's decision and, as discussed infra, Petitioner's counsel raised on direct appeal the states' failure to disclose witness James Parson's criminal record and work as a confidential source. This Court is not aware, then, of any conduct on the part of either Edward Downey or David Farmer that may have fallen below the standard of reasonably effective assistance.

Nor does there appear any conflict of interest between Farmer and Downey. "The Sixth Amendment right to effective assistance of counsel

encompasses 'a correlative right to representation that is free from conflict of interest.'" <u>Spreitzer v. Peters</u>, 114 F.3d 1435, 1450 (7th Cir. 1997) (quoting <u>Woods v. Georgia</u>, 450 U.S. 261, 271 (1981)). "A criminal defendant is entitled to counsel whose undivided loyalties lie with the client." <u>United States v. Ellison</u>, 798 F.2d 1102, 1106 (7th Cir. 1986). Therefore, "where a conflict of interest provides the predicate for an ineffective assistance claim, a defendant bears a lighter burden with regard to demonstrating prejudice." <u>Spreitzer</u>, 114 F.3d at 1450. Indeed, "the existence of a conflict itself demonstrates a denial of effective assistance of counsel." <u>United States v. Fish</u>, 34 F.3d 488, 492 (7th Cir. 1994). Moreover, it is "defense counsel's duty to avoid conflicts of interest and to advise the court promptly upon discovery of a conflict," <u>id.</u> at 493, as "it is the attorney confronted with a potential conflict who is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." <u>Id.</u> (quoting <u>Holloway v. Arkansas</u>, 435 U.S. 475, 485 (1978)).

The Seventh Circuit has found no conflict of interest where the
petitioner was represented by an assistant public defender whose
supervisor had previously been involved as a prosecutor against the
petitioner in the same proceeding.  See Spreitzer, 114 F.3d at 1149,
1452.  Therefore, this Court "fail[s] to see how the trial judge's insistence
that [Petitioner] be represented by a different attorney in the Public
Defender's office violated [Petitioner's] right to effective assistance of
counsel."  Id. at 1451.  That David Farmer works under Edward Downey
in the Adams County Public Defender's office, then, does not in itself
establish a conflict of interest.  See id. at 1449 (noting that Anfinson, the
petitioner's counsel, worked in the Public Defender's office under
Dockery, who "had previously been involved as a prosecutor against [the
petitioner] in the same proceeding").

Moreover, Farmer denied any conflict of interest when questioned
by the court.  Def.'s Ex. G at C511 ("MR. FARMER: Judge, when I'm
assigned a case, I act independently.   The fact Mr. Downey is my boss
doesn't affect me one way as far as when I handle a case.  I certainly

wouldn't be punished or suffer any discipline on his part if I found him to be ineffective."). Given Farmer's "duty to avoid conflicts of interest and to advise the court promptly upon discovery of a conflict, the trial court's reliance on [Farmer's] own assessment regarding the potential for conflict was entirely reasonable." <u>Fish</u>, 34 F.3d at 493.

Furthermore, review of the record shows commendable representation by both attorneys, and representation far exceeding the level of performance that might undermine confidence in the outcome of the trial. "There is absolutely no evidence in the record that [Farmer] was somehow affected by having [Downey] as a colleague or a supervisor." <u>Spreitzer</u>, 114 F.3d at 1452. "Nor does the record indicate that the asserted failure of the trial court to delve deeper into the alleged conflict prevented the unearthing of any material information necessary for the conflict determination." <u>Id.</u> Indeed, there existed no conflict of interest, and "[Petitioner] received a vigorous and thorough defense." <u>Id.</u>

However, because Petitioner did not provide the State adequate opportunity to address the alleged constitutional violation, this claim is

procedurally defaulted.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004).

The Seventh Circuit sets forth the test for determining whether a

petitioner allowed the State adequate opportunity to address alleged

constitutional violations: "(1) whether the petitioner relied on federal

cases that engage in constitutional analysis; (2) whether the petitioner

relied on state cases which apply a constitutional analysis to similar facts;

(3) whether the petitioner framed the claim in terms so particular as to

call to mind a specific constitutional right; and (4) whether the petitioner

alleged a pattern of facts that is well within the mainstream of

constitutional litigation."  Wilson v. Briley, 243 F.3d 325, 327 (7th Cir.

2001).

Here, Petitioner relied on state cases.[2]  The cases relied on by

Petitioner deal primarily in Illinois state law and only vaguely suggest any

constitutional association.[3]  Petitioner did not invoke the Fourteenth

---

[2] Petitioner relied primarily on People v. Moore, 207 Ill.2d 68 (Ill. 2003); People v. Peacock, 359 Ill. App. 3d 326 (Ill. App. Ct. 2005); People v. Cummings, 351 Ill. App. 3d 343 (Ill. App. Ct. 2004); and People v. Krankel, 102 Ill.2d 181 (Ill. 1984).

[3] Specifically, the Krankel inquiry tenuously relates to the Sixth Amendment's guarantee of "Assistance of Counsel."  However, none of the cases cited by Petitioner actually engage in constitutional analysis concerning the Krankel inquiry; indeed,

Amendment or any other constitutional provision during state court proceedings.  Finally, as noted <u>supra</u>, the <u>Krankel</u> inquiry is within the exclusive domain of state law; while the Constitution guarantees the right to counsel, Petitioner's claim turns entirely on the <u>Krankel</u> inquiry, which has no roots in the Constitution.  Indeed, the state appellate court addressed only the state-law <u>Krankel</u> issue on review.  Thus, Petitioner's claim does not fall "well within the mainstream of constitutional litigation."  His claim therefore fails the Seventh Circuit's test and is procedurally defaulted.

### B. *Petitioner Was Not Prejudiced by the Court's Prohibition on Titus Johnson's Testimony*

Petitioner alleges that his Due Process right was violated when the trial court prohibited Petitioner from eliciting Titus Johnson's testimony on whether Johnson had ever sold drugs to Petitioner.  The inquiry for this Court is "whether the exclusion of evidence was not just wrong, but

---

none even cite to a constitutional provision.  Because the cases do not engage in constitutional analysis and because the <u>Krankel</u> inquiry itself is a product of state law, Petitioner did not rely on state cases which apply a constitutional analysis to similar facts.  Petitioner's claim fails the second prong of the Seventh Circuit's test.  <u>See</u> <u>Wilson</u>, 243 F.3d at 327 (noting the second prong of the test is "whether the petitioner relied on state cases which apply a constitutional analysis to similar facts").

whether it was unreasonable to say that it did not violate [the petitioner's] due process right to present a defense." <u>Morgan v. Krenke</u>, 232 F.3d 562, 567 (7th Cir. 2000).  Considerable deference is given to the findings and judgments of state courts.  <u>See</u> <u>Williams</u>, 529 U.S. at 383.  "[A]n erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial."  <u>Howard v. O'Sullivan</u>, 185 F.3d 721, 723-24 (7th Cir. 1999). That is, there must be a "significant likelihood" that the petitioner has been wrongly convicted.  <u>Id.</u> at 724.

Petitioner advances two arguments as to the significance of Johnson's testimony: (1) his testimony may have supported Petitioner's sex-for-drugs defense, and (2) his testimony may have affected his credibility in the eyes of the jury.  Neither of these arguments meets the high threshold of prejudicial evidentiary rulings under the Fourteenth Amendment.

There was evidence at trial from which a jury might have inferred a drug-dealing relationship between Johnson and Petitioner.  Johnson

testified that he was currently incarcerated on multiple pending drug charges.  He was wearing shackles and was dressed in a prison uniform. Petitioner testified that "a dude named Titus" had sold him drugs on prior occasions.  Johnson's appearance and the testimony from both parties may have lead the jury to infer a drug-dealing relationship; this same evidence, then, may have  reflected poorly on Johnson's credibility.

Moreover, there is no reason to believe that, if questioned, Johnson would have admitted to selling drugs to Petitioner.  Indeed, defense counsel posed such a query to Johnson on cross-examination.  Before the State objected, Johnson reported he had never sold drugs to Petitioner. The objection was sustained, and the testimony was struck from the record.  There is no indication that Johnson's answer may have changed under further questioning.  The trial court's evidentiary ruling thus did not create a "significant likelihood" that Petitioner was wrongly convicted.

*C. The State's Failure to Disclose James Parson's Criminal Record is Insufficient to Undermine Confidence in the Outcome of the State Court Proceedings*

Petitioner claims that his Due Process right was violated when the State failed to disclose the criminal record of James Parson.  "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty to disclose evidence applies even where the accused has not requested the evidence, and the duty applies to both impeachment and exculpatory evidence.  Strickler v. Greene, 527 U.S. 263, 280 (1999).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667, 682 (1985).

The state trial court has acknowledged a discovery violation pertaining to the failure to release Parson's criminal record.  Although it appears the error was inadvertent, the prosecution's good faith is

irrelevant to Petitioner's Due Process right.  The question for this Court, then, is whether the suppressed evidence is material to Petitioner's guilt or punishment.

Clearly, the suppressed evidence is not material to Petitioner's guilt or punishment.  There is no reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. Parson's testimony revolved primarily around Petitioner's access to and possession of a BB gun.  His testimony was corroborated by testimony from Roye Shumpert (Petitioner's sister) and from Petitioner himself. While Parson's criminal record may have affected his credibility in the eyes of the jury had it been released, "[his] testimony was only a small portion of that which was presented at [Petitioner's] trial," and "was cumulative of testimony presented from [Petitioner's] sister and [Petitioner] himself."  People v. Clark, No. 4-06-0116, at 17 (Ill. App. Ct. Nov. 20, 2007).  Moreover, Parson's acknowledgment that Petitioner's sister had secured a restraining order against him may have

reflected negatively on his credibility.  Id.  This testimony was also

consistent with Petitioner's testimony.  Id.

Given the relatively small scope of Parson's testimony and the fact

that his testimony was corroborative of other witness testimony, it is

difficult to conceive how the State's failure to disclose Parson's record

might undermine confidence in the outcome of the trial.  The state

court's refusal to award a new trial on this issue was therefore not

unreasonable.

### D. Petitioner's Perjured Testimony Claim Lacks Factual Support and is Procedurally Defaulted

Petitioner alleges that his Due Process right was violated when the

State knowingly presented the perjured testimony of James Parson.

Perjury generally requires the statement or subscription by an individual

under oath of "any material matter which he does not believe to be true."

See 18 U.S.C. § 1621(1) (2006).  Moreover, "a conviction obtained

through use of false evidence, known to be such by representatives of the

State, must fall under the Fourteenth Amendment.  The same result

obtains when the State, although not soliciting false evidence, allows it to

go uncorrected when it appears." Napue v. People of State of Ill., 360

U.S. 264, 269 (1959).  The principle applies even where the false

evidence "goes only to the credibility of [a] witness."  Id.  Thus, "when a

conviction is obtained through the knowing use of false testimony, it

must be set aside 'if there is any reasonable likelihood that the false

testimony could have affected the judgment of the jury.'" Griffin v.

Pierce, 622 F.3d 831, 842 (7th Cir. 2010) (quoting United States v.

Agurs, 427 U.S. 97, 103 (1976)).

> [A] new trial is required if a petitioner establishes that (1) the
> prosecution presented false testimony or failed to disclose that
> false testimony was used to convict, (2) the prosecution knew
> or should have known that the testimony was false, and (3)
> there is a reasonable likelihood that the testimony could have
> affected the jury's judgment.

Griffin, 622 F.3d at 842.

Petitioner claims the State knew of Parson's work as a confidential

source and allowed him to "present himself as someone whom [sic] he is

not;" this "knowing[] use of false testimony," then, was used to obtain

Petitioner's conviction in violation of Petitioner's Fourteenth

Amendment rights.  However, the trial record contradicts Petitioner's

claim.  James Parson was never questioned about his work as a confidential source and consequently neither confirmed nor denied that he was also known as Anthony White.  Parson, in other words, could not have testified falsely concerning subjects about which he was not asked.  Nor was the State obligated "to disclose Parson's work as a confidential source . . . .  Rule 412 [of the Illinois Supreme Court Rules] does not provide a basis for the discovery of that information."  People v. Clark, No. 4-06-0116, at 16 (Ill. App. Ct. Nov. 20, 2007).  Because no false testimony was ever presented at trial, the prosecution did not present false testimony or fail to disclose that false testimony was used to convict Petitioner.  Indeed, "[t]he record contains no evidence of perjury by Parson and the issue is without merit."  People v. Clark, No. 4-08-0927, at 5 (Ill. App. Ct. Dec. 7, 2009).

Even assuming arguendo that Petitioner's claim has merit, no reasonable likelihood exists that the disputed testimony could have affected the jury's judgment.  As noted supra, "[Parson's] testimony was only a small portion of that which was presented at [Petitioner's] trial:"

His testimony simply "concerned a BB gun that the State theorized [Petitioner] used during his attack on [Betty Morgan] and how [Petitioner] could have access to the BB gun." People v. Clark, No. 4-06-0116, at 15, 17 (Ill. App. Ct. Nov. 20, 2007).  His testimony "was [also] cumulative of testimony presented from [Petitioner's] sister and [Petitioner] himself.  Further, Parson acknowledged that [Petitioner's] sister had a restraining order against him, reflecting negatively on his credibility."  Id. at 17.  Therefore, Parson's testimony was only a small portion of the evidence against Petitioner, his testimony was corroborative of other witness testimony, and his credibility was compromised.  Had the jury known of Parson's work as a confidential source, the outcome would not likely have been different.  There is no reasonable likelihood that the disputed testimony could have affected the jury's judgment.

Merits aside, Petitioner's false testimony claim is procedurally defaulted.  While Petitioner raised the claim to the Illinois appellate court, he reformulated the claim in his PLA with the Illinois Supreme

Court from one alleging Due Process violations to one alleging ineffective

assistance of counsel.  Specifically, Petitioner changed the claim to one

alleging his trial counsel was ineffective for failing to object to the false

testimony and his appellate counsel was ineffective for failing to raise a

claim of ineffective assistance of trial counsel on direct appeal.

> However, an assertion that one's counsel was ineffective for
> failing to pursue particular constitutional issues is a claim
> separate and independent of those issues.  A meritorious claim
> of attorney ineffectiveness might amount to cause for the
> failure to present an issue to a state court, but the fact that
> the ineffectiveness claim was raised at some point in state
> court does not mean that the state court was given the
> opportunity to address the underlying issue that the attorney
> in question neglected to raise.

Lewis, 390 F.3d at 1027.  Because the Illinois Supreme Court was not

given adequate opportunity to address the underlying issue, Petitioner

has not exhausted state court remedies, and the claim is procedurally

defaulted.  Moreover, this Court is not aware of any cause for Petitioner's

default and, because Petitioner's claim is without merit, the denial of

relief will not result in a miscarriage of justice.

### E. Petitioner Cannot Demonstrate Attorney Error in Support of His Ineffective Assistance of Counsel Claim

Petitioner claims that his Sixth and Fourteenth Amendment rights were violated when his counsel failed to raise the issue that James Parson works as a confidential source for the State under the name "Anthony White."  That is, petitioner alleges he was denied effective assistance of counsel, resulting in unfair trial proceedings.  As stated, "[Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u>, 466 U.S. at 694. Attorney performance is judged against a standard of "reasonably effective assistance."  <u>Id.</u> at 687.  Moreover, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  <u>Id.</u> at 690.

Petitioner's claim must fail, as there is no reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Specifically, the attorney error Petitioner

alleges has no basis in fact:  Counsel *did* raise the issue on direct appeal.

Indeed, the James Parson issue was addressed on direct appeal by the

Appellate Court of Illinois, Fourth District.  See People v. Clark, No. 4-

06-0116, at 16–18 (Ill. App. Ct. Nov. 20, 2007) (noting that the State's

failure to disclose Parson's work as a confidential source did not prejudice

Petitioner, and thus did not warrant a new trial).  Because counsel did

raise the issue, counsel did not err.  Without attorney error, then,

Petitioner's claim of ineffective assistance of counsel must fail.

### F. Certificate of Appealability

Upon issuing an order denying habeas relief, a court must

determine whether to issue a certificate of appealability for any of the

claims.  See Rule 11(a), Rules Governing Section 2254 Cases in the

United States District Courts.  This requires that the applicant make a

"substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  If the claim is denied on the merits, the applicant must show

that reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong.  Slack v. McDaniel, 529

U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000).  If the claim

is denied on procedural grounds, the applicant must show that reasonable

jurists would find it debatable whether the claim states the denial of a

constitutional right, and that they would find the procedural ruling

debatable as well.  <u>Id.</u>  Because this Court finds that the relevant case law

clearly compels the result reached here, this Court declines to issue a

certificate of appealability on any of Petitioner's grounds for relief.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of

Habeas Corpus (d/e 1) is DENIED.  Moreover, the Court declines to

issue a certificate of appealability.  This case is CLOSED.

IT IS SO ORDERED.

ENTER: August 1, 2012.

FOR THE COURT:                          s/ Sue E. Myerscough
                                   SUE E. MYERSCOUGH
                             UNITED STATES DISTRICT JUDGE